# In the United States District Court
# for the District of Utah, Central Division

| | |
|---|---|
| **AUDREY DAVIS,** <br><br> Claimant, <br><br> v. <br><br> **JO ANNE BARNHART,** <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:04 CV 633 JTG |

This matter is before the court on claimants Motion to Reverse the decision or in the alternative to Remand the decision of the Social Security Administration. Both parties have filed briefs, and the matter was extensively argued.

The Court finds that oral argument would not assist the Court in this case for the reasons set forth in this Memorandum Decision and Order. Therefore, being fully advised, and after due consideration, the Court enters its Memorandum Decision and Order.

### PROCEDURAL HISTORY

On March 2, 2001, Claimant Audrey E. Davis filed her application for Supplemental Security Income (SSI) and Disability Insurance Benefits. The onset date was determined to be March 2, 2001. Her initial claim was denied on March 25, 2002, Claimant filed

1

a request for reconsideration of the disability report on June 20, 2002.  The Social Security Administration denied claimant's request for reconsideration on August 15, 2002.  Audrey then timely requested a hearing before an Administrative Law Judge (ALJ), and a hearing was held on March 17, 2003.  At the hearing, Audrey was represented by Stephen W. Julien.  Dr. Thomas Atkin, a medical expert, and John Hurst, a vocational expert, were also present and testified.  Claimant withdrew her Disability Insurance Benefits application at the hearing.

The ALJ issued a decision on August 6, 2003 denying her claim.  Claimant then filed a timely appeal for request of review with the Social Security Appeals Council.  The Appeals Council denied claimant's request for review on August 27, 2004.

Claimant has exhausted her administrative remedies and filed suit in federal court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## Factual Background

Claimant is a 35-year old woman with a high school education who has previously worked as a sorter/handler, a maid, a salad maker, a dishwasher or kitchen helper, a bus girl, and a cashier.  Claimant was taken care of as a child, primarily by her grandparents.  Her mother and father were divorced and each have remarried several times.  Her mother is a schizophrenic, and when she was 10 years old she was sexually abused by a swimming instructor.  Despite these problems, claimant did relatively well in high school and was involved in extracurricular activities.  Claimant attended Dixie State College and then LDS Business College where she did

relatively well in her classes, but she did not graduate.

At age 19, Claimant alleges that her mental illness began and that she experienced severe depression from this point to the present.  In her twenties, the claimant met and married a schizophrenic patient at the facility where claimant was receiving counseling. Claimant was married for ten years but is now divorced.  She has no children.  Claimant alleges that her disability is due to being severely depressed, having obsessive compulsive disorder, anxiety disorder, borderline personality disorder and a learning disability.

### THE FIVE STEP SEQUENTIAL PROCESS

There is a five step process to determine whether a claimant is disabled pursuant to 20 C.F. R. § 416.920:

1)  If the claimant is performing substantial gainful work she is not disabled.
2)  If the claimant is not performing substantial gainful work, her impairment(s) must be severe before she can be found to be disabled.
3)  If claimant is not performing substantial gainful work and has a severe impairment(s) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, 20 C.F.R. § 404, the claimant is presumed disabled without further inquiry.
4)  If the claimant's impairment(s) does not prevent her from doing her past relevant work, she is not disabled.
5)  Even if the claimant's impairment(s) prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

At step one the ALJ found that Claimant had not engaged in substantial gainful employment activity (SGA) since her onset date of disability in 2001.  At step two the ALJ

reviewed Claimant's medical record to determine if she had a medically determinable impairment that would significantly limit her physical or mental ability to do basic work activities under 20 CFR § 404.1521.  The ALJ specifically looked at the mental health evaluations by Dr. Mark Smasal, Dr. Dean Pearson, and Dr. Brent Turek.  The ALJ determined that the claimant has the following medically determinable, severe impairment under step two: an affective depressive disorder and a personality disorder.

At step three the ALJ compared the claimant's impairments to the listed impairments in Appendix 1 of Subpart P of Social Security Regulation No. 4.  The ALJ determined that the findings in the record do not establish a severe impairment which has met or equaled an impairment listed under the applicable statutes.  In coming to that conclusion, the ALJ looked at expert testimony, the medical exhibits, the "clinical, laboratory and other signs", and the State agency medical consultants who initially evaluated this issue.  ALJ report at 4.  The ALJ stated that special review of section 12.04 discussing affective disorders and 12.08 discussing personality disorders was given.

At step four the ALJ looked to more medical evidence to help determine the nature and severity of the impairments and resulting limitations. The ALJ detailed the medical findings and evidence given by Dr. Atkin, Dr. Smasal, Dr. Pearson, Dr. Turek, the State Agency consultant, Cindy Jones, and Mark Clayton.  Throughout this analysis, the ALJ pointed out a consistent thread in the evaluations, that although claimant has the ability to work on some level,

Claimant has no desire to work and her goal in life is to find someone else to take care of her. The ALJ questioned claimant's credibility and noted that the medical evaluators questioned the severity and reliability of claimant's problems. The ALJ further stated that, "it appears [Claimant's] disorders can be ameliorated by appropriate medical treatment." ALJ Report at 6. The ALJ did "give her the benefit of the doubt" on her claim that she had carpal tunnel syndrome in her left wrist and accommodated that deficiency in the residual functional capacity. *Id*. At 7. After a thorough discussion of the evidence, the ALJ concluded that:

> [T]he claimant has the residual functional capacity to frequently lift or carry ten pounds and occasionally lift and carry twenty pounds; to stand or walk for up to six hours in an eight hour workday; to sit, with normal breaks, for up to six hours in an eight-hour workday; to perform repetitive push and pull motions without limitation, including the operation of hand and foot controls, with her upper extremities and her right lower extremity. . . Claimant has no visual or communicative limitations. She should never be exposed to [extreme] "weather". . . Otherwise, claimant has no environmental exposure limitations. She is unable to carry out detailed instructions or make complex decisions. She should have minimal contact with co-workers or the general public.

*Id*. at 8.

The ALJ then discussed the opinion of the vocational expert who stated that, except for the maid position, the claimant could not perform any of her past relevant work because it required too much exertion for her. The ALJ determined that this testimony was reliable but decided not to further address step four or answer the issue of whether Claimant could perform her past relevant work because, "this case can be definitively decided at step five". *Id*.

The ALJ proceeded to step five where the burden shifts to the government to show that there is other work that exists in significant numbers in the national economy that Claimant can perform.  The ALJ determined that based on Claimants residual functional capacity, she is capable of performing a significant range of light work under 20 CFR §§ 404.1567 and 416.967.  Because the claimant is not capable of performing the full range of light work, the ALJ then turned to the vocational expert to determine whether there are a significant number of jobs in the national economy that Claimant could perform given her capacity.  The vocational expert testified that the claimant could work as a surveillance system monitor, as a touch-up screener, as a semi-conductor bonder, as an assembler of small production parts, and as a housekeeper.  The ALJ adopted the opinion of the vocational expert and found that "considering claimant's age, educational background, work experience, and residual functional capacity, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy" and therefore she is not disabled.  *Id*. at 10.

## STANDARD OF REVIEW

The Court's review of the decision is limited to determining whether the "factual findings are supported by substantial evidence in the record viewed as a whole" and whether the correct legal standards were applied.  *Castellano v. Secretary of Health & Human Services*, 26 F.3d 1027, 1028 (10th Cir. 1994).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court may consider the specific rules of law that the ALJ must follow in "'weighing particular types of evidence,' but [the court] will not reweigh the evidence or substitute our judgment for the Commissioner's." *Joyce v. Barnhart*, 2004 WL 214478 (10th Cir. 2004).

## ANALYSIS

A.  Specific Findings Regarding the "B" criteria.

Plaintiff argues that the ALJ "failed to make the required determination regarding the severity of claimant's mental impairments using the "B" criteria."[1]  Plaintiff Memo. at 11. "When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Secretary must follow the procedure for evaluating mental impairments set forth in 20 § 404.1520a" and "then evaluate the degree of functional loss resulting from the impairment, using the "Part B" criteria." *Cruse v. United States Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995).  For the claimant to meet the listing requirements under the Part "B" criteria and thus be presumed disabled under step three of the sequential process, the impairment must result in *at least two* of the following:

   1. Marked restrictions of activities of daily living; or
   2. Marked difficulties in maintaining social functioning; or
   3. Frequent deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner; or
   4. Repeated episodes of deterioration or decompensation in work or work-like

---

[1] Claimant raised three issues for review by the Court: (1) the ALJ failed to assess claimants mental functioning in the four "B" criteria, (2) the ALJ failed to include any mental limitations as required by Social Security Ruling in the ALJ's residual functional capacity assessment, and (3) the ALJ did not sufficiently discussed Dr. John Hardy's assessment of the claimants mental functioning.

>setting which cause the individual to withdraw from that situation or to experience exacerbation of signs or symptoms.

*Id*. at 617.  To document these findings, "the written decision issued by the administrative law judge or Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in the ["B" criteria]."  20 C.F.R. § 416.920a(c)(2005); 20 C.F.R. § 404.1520a(3)(2005); *see Bolton v. Barnhart*, 117 Fed. Appx. 80, 84-5 (10th Cir. 2004).

The only case discussed by either party on this issue is *Cruse v. United States Department of Health & Human Services*, 49 F.3d 614 (10th Cir. 1995).  In *Cruse*, the ALJ determined that claimants physical and mental impairments did not meet the Listing of Impairments under step three.  49 F.3d. at 616.  When evaluating the "B" criteria, the ALJ completed a Psychiatric Review Technique Form ("PRT form") without the assistance of a medical advisor.  *Id*. at 617.  In his written opinion the ALJ repeated the conclusions of the PRT form, but only generally discussed the evidence of Cruse's mental impairment.  *Id*. at 618.  Two other doctors completed evaluations, but did not specifically examine the "B" factors.  *Id*.  The court concluded that the ALJ improperly considered the evidence at step three and the record did not contain substantial competent evidence to support the ALJ's conclusion.  *Id*.

The unpublished case of *Lee v. Barnhart,* 117 Fed.Appx. 674, 2004 WL 2810224

(10th Cir. 2004)(unpublished opinion) is also helpful to this case.  In *Lee*, the ALJ was required to evaluate claimants mental impairments using the "B" factors.  *Id*. at 677.   The ALJ relied entirely upon a PRT form completed by the agency and on a one-page medical consultant review form completed by an agency medical consultant.  *Id*. at 678.  Moreover, the medical evaluator who the ALJ relied upon had not examined the claimant and had made his evaluation based on the report of another doctor.  The court then looked at the other evidence the ALJ relied upon and gave little credence to the one-page medical consultant review form, stating that such forms are of dubious value when not accompanied by thorough written reports or testimony.  *Id*. at 678-79 (quoting *Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004)).  The court found that

> [t]he ALJ is <u>required to document his evaluation of these functional factors in the body of his decision</u>, <u>making specific findings as to the evidence relied upon and the degree of limitation in each of these areas</u>.

*Id*. at 677 (emphasis added).  Because the ALJ did very little of the required mental impairment analysis, the circuit court reversed the judgment of the district court in that case.

      Similarly, the ALJ in this case relied upon a medical evaluator who based his opinion on reports of other physicians, but had not interviewed the claimant himself.  Moreover, the additional reports relied upon by the ALJ in this case parallel those discussed in *Lee*.  Each "evaluation" is one-page and simply marks the appropriate box indicating the degree of limitation, without any discussion as to why that box was checked.  While the medical evidence appears to support the ALJ's decision on initial review, in this case the ALJ erred in not making the required  specific findings in the body of his opinion as to the degree of limitation in each of

the "B factor" areas as required under Tenth Circuit case law.  This is essential in order for this Court to review the record accurately and insure the specific rules of law are followed by the ALJ in weighing the evidence, but not reweighing the evidence or substituting this Court's judgment for the Commissioner's.  *See Joyce v. Barnhart*, 2004 WL 214478 (10th Cir. 2004).

　　　　　The ALJ stated that he used the testimony of the medical expert witness in forming his conclusion.  ALJ report at 4.  At the hearing the ALJ specifically asked Dr. Thomas Atkin, the medical expert, how he would evaluate claimant under the "B" criteria.  Trans. at 25.  Dr. Atkin stated, "Under restrictions of activities of daily living mild, difficulty maintaining social functioning mild, difficulties in maintaining concentration, persistent, or pace moderate, and episodes of decompensation I would have to say none."  *Id*.  Dr. Atkin stated that the basis of his testimony was the medical record as a whole and specifically the therapist's notes.  *Id*.  Additionally, the ALJ's report states that in reaching his conclusion, he "has considered the opinions of the State agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion."  ALJ report at 4.  Also, contained within the exhibits are two sheets of paper evaluating the claimant using the "B" criteria.  Exh. 12f at 11, 15f at 11.  The first evaluation on December 2, 2001 rates the claimant's restrictions of activities of daily living as mild to moderate, difficulties in maintaining social functioning as marked, difficulties in maintaining concentration as moderate, and insufficient evidence to determine the fourth criteria.  The second evaluation, dated March 15, 2002 rates claimant with: mild on her restrictions of daily living; moderate in

her difficulty maintaining social functioning; mild in her difficulty maintaining concentration; and one or two repeated episodes of decompensation.

Regardless of these evaluations, which the ALJ did not cite to in his discussion under step three, the ALJ has still not provided sufficient analysis under the "B" factors within his decision. While the ALJ does discuss the evidence relied upon in making his conclusion with regards to step three, the ALJ does not discuss the "B" criteria in his opinion and does not make specific findings in the written decision as to claimants degree of limitation in these four categories as required.[2]

The Social Security Code is clear:

> "the decision **must** show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision **must** include a specific finding as to the degree of limitation in each of the functional areas described in the ["B" criteria]."

20 C.F.R. § 404.1520a(3)(2005) (emphasis added).

Based upon the foregoing, it is clear that the ALJ failed to assess and adequately discuss Claimant's mental functioning as required in step three in the "B"criteria. Accordingly, given the plain language of the code, this case must be and is remanded so that the ALJ can make specific findings as to the degree of limitation in each of the four "B" criteria. This will require an evidentiary hearing so that "B" criteria may be determined and specific findings set forth. The

---

[2]The ALJ cites to no specific exhibits during his analysis of step three and uses very general statements to conclude that claimant's severe impairments do not meet or equal any listing of impairments. Although the ALJ specifically states that the medical evidence does not meet the "C" criteria, the "B" criteria are oddly missing.

ALJ should reconsider whether claimant is disabled under the step three sequential analysis. If the ALJ shall determine that claimant is disabled under step three, no further analysis of step four or five will be necessary. If the ALJ determines by appropriate findings that the claimant is not disabled under step three, this case is remanded for the ALJ to make specific findings under step four, as well as step five. The additional issues presented on this appeal shall be specifically discussed. These additional issues are: (1) whether the ALJ failed to include claimant's mental limitations in the residual functional capacity assessment; and (2) whether Dr. John Hardy's assessment of the claimants mental functioning was sufficiently discussed.

Based upon the foregoing, it is hereby

**ORDERED** that Claimant's Motion to Remand is Granted so that the ALJ may make findings in accordance with this Memorandum Decision and Order, and render a decision as to the ultimate determination whether or not claimant is disabled and entitled to benefits.

DATED this <u>27th</u> day of July, 2005.

                                               *J Thomas Greene*
                                               _____
                                               J. THOMAS GREENE
                                               UNITED STATES DISTRICT JUDGE